**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH C. SHEEHAN, | ) | No. 20-cv-05282 |
| Appellant, | ) | |
| | ) | Judge Andrea R. Wood |
| v. | ) | |
| | ) | On Appeal from the United States |
| BRECCIA UNLIMITED COMPANY, et al., | ) | Bankruptcy Court for the Northern |
| | ) | District of Illinois, No. 20 A 146 |
| Appellees. | ) | |
| —————————————————— | ) | |
| | ) | |
| JOSEPH C. SHEEHAN, | ) | No. 20-cv-05283 |
| | ) | |
| Appellant, | ) | Judge Andrea R. Wood |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | Bankruptcy Court for the Northern |
| DAMIEN MURRAN, et al., | ) | District of Illinois, No. 20 A 146 |
| | ) | |
| Appellees. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Appellant Joseph Sheehan is an Illinois resident with substantial business interests in Ireland. When he defaulted on loans extended by an Irish bank, Appellee Breccia Unlimited Company ("Breccia") purchased those loans and proceeded to foreclose on the underlying collateral, namely, Sheehan's investments in an Irish company and Irish real estate. Breccia retained Appellee Damien Murran, an employee of Appellee RSM Ireland Business Advisory Limited ("RSM Ireland"), to market and sell the collateral. In the meantime, Sheehan filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. Shortly thereafter, Sheehan filed an adversary complaint in those bankruptcy proceedings against Appellees Breccia, Irish Agricultural Development Company Unlimited ("IADC"), Murran, and RSM Ireland, alleging that Appellees improperly exercised control over

the property of his bankruptcy estate in violation of the Bankruptcy Code's automatic stay provision. Breccia and IADC together moved to dismiss the adversary proceeding, and Murran and RSM Ireland also jointly moved to dismiss it. Both motions sought to dismiss Sheehan's adversary complaint for lack of personal jurisdiction, improper service of process, or, alternatively, on the grounds of *forum non conveniens*. The Bankruptcy Court granted both motions and Sheehan now appeals. For the reasons that follow, the Bankruptcy Court's orders are affirmed.

## BACKGROUND

The following facts taken from the Bankruptcy Court's record of the underlying adversary proceedings are undisputed.

Appellant Joseph Sheehan immigrated to the United States from Ireland several decades ago and currently resides in Winfield, Illinois. In 2006, Sheehan purchased shares in an Irish company known as Blackrock Hospital Limited ("Blackrock Shares"), which owned and operated a private teaching hospital located in Dublin, Ireland, known as the Blackrock Clinic. Sheehan subsequently took out two loans from an Irish bank—one in 2006 and one in 2008—both of which were secured by the Blackrock Shares. He defaulted on both loans in 2010. Ultimately, Sheehan's defaulted loans were acquired in 2014 by Appellee Breccia, an Irish private unlimited company with its principal place of business in Dublin, Ireland.

After Breccia demanded Sheehan repay the loans, Sheehan filed a lawsuit against Breccia in Irish court. The lawsuit was initiated in 2014 and resulted in a ruling in Breccia's favor in July 2019. Shortly after judgment was entered in its favor, Breccia registered Sheehan's Blackrock Shares in its name. Breccia also appointed Appellee Damien Murran, an Irish citizen and resident, as the receiver of the Blackrock Shares to market and sell those shares. Murran is an Irish citizen

2

and resident, and at all relevant times, he was employed by Appellee RSM Ireland, an Irish limited company with its principal place of business in Dublin, Ireland.[1]

On March 12, 2020, Sheehan filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois. By filing for bankruptcy, an estate was created comprised of "all legal or equitable interests of the debtor [Sheehan] in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). And under the Bankruptcy Code, Sheehan's initiation of bankruptcy proceedings triggered an automatic stay, "applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The same day he filed for bankruptcy, Sheehan notified the receiver that he had commenced bankruptcy proceedings and that, as a result, there was an automatic stay in place barring any efforts by the receiver to exercise control over the Blackrock Shares. Several days later, Sheehan provided Breccia with a similar notice. Nonetheless, shortly after Sheehan initiated bankruptcy proceedings, the receiver sold the Blackrock Shares to Appellee IADC, an Irish private unlimited company with its principal place of business in Milestown, Ireland.

Separate and independent of the Blackrock Shares, Sheehan owned real estate in the Irish village of Ballyheigue ("Ballyheigue Property"). Sheehan obtained a mortgage for the Ballyheigue Property in 2006 from the same Irish bank that had extended him the two loans secured by the Blackrock Shares. Breccia acquired the Irish bank's interest in the Ballyheigue Property's mortgage in 2014, at the same time it acquired Sheehan's loans secured by the

---

[1] Sheehan alleges that Murran performed his receivership functions in his capacity as an RSM Ireland employee. However, Murran and RSM Ireland contend that under Irish law, a receiver is appointed as an individual and not through his employer. Thus, they deny that RSM Ireland has acted as a receiver with respect to any property at issue here. The Bankruptcy Court expressly declined to rule on RSM Ireland's relationship to Murran's receivership duties and the issue does not factor into the present appeal.

Blackrock Shares. On March 23, 2020, Breccia appointed Murran as the receiver for the Ballyheigue Property following Sheehan's default on his mortgage. Sheehan did not become aware of the Ballyheigue Property receivership until April 7, 2020, when an agent of the receiver informed Sheehan that he had entered the Ballyheigue Property and changed the locks. That same day, the receiver notified Sheehan of the commencement of the Ballyheigue Property receivership and advised that the receivership intended to sell the property and apply the proceeds toward the discharge of Sheehan's debts. In response, Sheehan notified the receiver that the automatic stay applied to the Ballyheigue Property.

Claiming that Appellees' actions taken after his bankruptcy petition with respect to the Blackrock Shares and the Ballyheigue Property violated the automatic stay, Sheehan filed an adversary proceeding in his pending Chapter 11 bankruptcy case. In his adversary complaint, Sheehan requested the return of the Blackrock Shares and the Ballyheigue Property to his bankruptcy estate, an order compelling Appellees' compliance with the automatic stay, and an award of damages for Appellees' willful violations of the automatic stay. Two motions to dismiss the adversary complaint were filed: one by Breccia and IADC and the other by Murran and RSM Ireland. Both motions sought dismissal of the adversary complaint pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process and pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In addition, Murran and RSM Ireland's motion raised the doctrine of *forum non conveniens* as an alternative basis for dismissal.

The Bankruptcy Court entered separate orders granting each motion to dismiss. Together, the Bankruptcy Court's orders found that Sheehan's email service on Appellees was improper under the Hague Convention. Further, the Bankruptcy Court found that no Appellee conducted any activity related to the adversary claims in the United States, and the only link between

Appellees and the forum was the fact that Sheehan lived in Illinois. Consequently, the Bankruptcy Court held that it did not have specific personal jurisdiction over Appellees. Finally, in its order granting Murran and RSM Ireland's motion to dismiss, the Bankruptcy Court held that the doctrine of *forum non conveniens* was also a proper basis for dismissal. Sheehan now appeals both orders.

## DISCUSSION

Under 28 U.S.C. § 158(a), federal district courts have jurisdiction to review bankruptcy court decisions. When considering a bankruptcy appeal, a district court reviews the bankruptcy court's findings of fact for clear error while its conclusions of law are reviewed *de novo*. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011); *In re Brittwood Creek, LLC*, 450 B.R. 769, 773 (N.D. Ill. 2011). Sheehan's appeal raises the following issues: (1) whether the Bankruptcy Court erred by refusing to exercise personal jurisdiction over Appellees; (2) whether the Bankruptcy Court erred in refusing to allow Sheehan to conduct jurisdictional discovery as an alternative to dismissal; (3) whether the Bankruptcy Court failed to consider fully Sheehan's efforts to serve Appellees consistent with the Hague Convention; and (4) whether the Bankruptcy Court improperly found that *forum non conveniens* also provided a basis to grant Murran and RSM Ireland's motion to dismiss. The Court begins by addressing whether the Bankruptcy Court correctly found that it lacked personal jurisdiction over Appellees.

While Breccia and IADC deny that either the Blackrock Shares or the Ballyheigue Property are, in fact, property of Sheehan's bankruptcy estate, they acknowledge that the issue is not relevant to their personal jurisdiction arguments. Thus, for present purposes, the Court proceeds as if both properties are part of Sheehan's estate.

As discussed above, "under the Bankruptcy Code, the filing of a bankruptcy petition automatically halts efforts to collect prepetition debts from the bankrupt debtor outside the bankruptcy forum. The stay serves to maintain the status quo and prevent dismemberment of the estate during the pendency of the bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020) (internal quotation marks and citation omitted). Among other things, the automatic stay "bars the commencement or continuation of lawsuits to recover from the debtor, enforcement of liens or judgments against the debtor, and exercise of control over the debtor's property." *Id.* The automatic stay applies extraterritorially. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 474 B.R. 76, 82 (S.D.N.Y. 2012); *see also In re Ramsat, Ltd.*, 98 F.3d 956, 961 (7th Cir. 1996) ("The efficacy of the bankruptcy proceeding depends on the court's ability to control and marshal the assets of the debtor wherever located . . . ."). Thus, there is no dispute that the automatic stay applied to both the Blackrock Shares and the Ballyheigue Property (assuming, of course, that both properties were part of Sheehan's estate). Nonetheless, "a bankruptcy court can enforce the automatic stay extraterritorially only against entities over which it has [personal] jurisdiction." *Sec. Inv. Prot. Corp.*, 474 B.R. at 82.

When Sheehan commenced Chapter 11 proceedings, the Bankruptcy Court acquired "exclusive jurisdiction" over "all of the property, wherever located, of [Sheehan] as of the commencement of [the] case, and of property of the estate." 28 U.S.C. § 1334(e)(1). Because this grant of "exclusive jurisdiction" is over the debtor's property, "[b]ankruptcy jurisdiction . . . is principally *in rem* jurisdiction." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 369 (2006); *see also Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447–48 (2004). "*In rem* proceedings affect the interests of all persons in designated property and don't implicate a court's authority over a defendant's person." *Trs. of Purdue Univ. v. Vintage Brand, LLC*, No. 4:20-cv-076-RLM-APR,

2021 WL 2105371, at *2 (N.D. Ind. May 25, 2021) (citing *Shaffer v. Heitner*, 433 U.S. 186, 199 (1977)). Therefore, § 1334(e)(1) concerns only the Bankruptcy Court's subject-matter jurisdiction. *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 96 (2d Cir. 2005) (noting that 28 U.S.C. § 1334(e) confers "subject[-]matter jurisdiction over a debtor's property"). It does not speak to whether the Bankruptcy Court could assert personal jurisdiction over each Appellee.

Federal Rule of Bankruptcy Procedure 7004(f) permits a bankruptcy court to exercise personal jurisdiction over a defendant in an adversary proceeding so long as "the exercise of jurisdiction is consistent with the Constitution." The "constitutional touchstone" of the personal jurisdiction inquiry is "whether the defendant purposefully established 'minimum contacts' in the forum state." *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 108–09 (1987). Because Rule 7004 provides for nationwide service of process, a "federal bankruptcy court's assertion of personal jurisdiction need only satisfy the [Due Process Clause of the] Fifth Amendment to the U.S. Constitution, which in turn requires that the defendant has satisfied the minimum-contacts test with respect to the United States as a whole." *In re Teknek, LLC*, 354 B.R. 181, 191–92 (Bankr. N.D. Ill. 2006).

Personal jurisdiction can be general or specific. Sheehan, however, does not contend that the Bankruptcy Court could assert general jurisdiction over any Appellee, so the present inquiry will be limited to whether the Bankruptcy Court properly found that it did not have specific jurisdiction over Appellees. That inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Specifically, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). There is specific jurisdiction where "(1) the defendant has purposefully directed [its] activities at the forum state or

purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* In addition, the exercise of jurisdiction "must also comport with traditional notions of fair play and substantial justice." *Id.*

There is no dispute among the parties that Appellees are all Irish residents, the Blackrock Shares and Ballyheigue Property are both located in Ireland, and all Appellees' alleged conduct in violation of the automatic stay occurred in Ireland. As the Bankruptcy Court found, the only connection between Appellees and the United States was Sheehan's residence in the United States. Yet, the Supreme Court has held that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. Indeed, "[d]ue process requires that a defendant be haled into a court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Sheehan contends that because Appellees' actions in Ireland were purposefully directed at the property of an Illinois resident and caused injury to him there, they should have foreseen that their conduct could result in them being haled into a United States court. In particular, he emphasizes that he warned Appellees prior to filing his adversary complaint that both the Blackrock Shares and the Ballyheigue Property were property of his bankruptcy estate and subject to the automatic stay. Thus, Sheehan asserts that Appellees were on notice that their subsequent acts in contravention of the automatic stay were purposefully directed toward and caused injury in the United States.

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court held that California had personal jurisdiction over a plaintiff's libel claims even though they were brought against Florida-based defendants who had written and edited the allegedly libelous article in Florida because of the "'effects' of their Florida conduct in California." *Id.* at 789. Specifically, it explained that the defendants should have reasonably anticipated being subject to jurisdiction in California where "their intentional, and allegedly tortious, actions were expressly aimed" at California and "they knew that the brunt of that injury would be felt" by the plaintiff in California. *Id.* at 789–90. Later, in *Walden*, the Supreme Court observed that the *Calder* defendants had ample contacts with the forum state itself, as the defendants

> relied on phone calls to 'California sources' for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the 'brunt' of that injury was suffered by the plaintiff in that State.

*Walden*, 571 U.S. at 287. Thus, "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff. ***The strength of that connection was largely a function of the nature of the libel tort***." *Id.* at 287 (emphasis added). Indeed, the Supreme Court went on to note that given that the article in question appeared in a magazine that was sold in California and "publication to third persons is a necessary element of libel, the defendants' intentional tort actually occurred in California." *Id.* at 288. In short, *Walden* elaborated that the Supreme Court's holding in "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290.

Applying the principles set forth in *Walden* here, the Bankruptcy Court correctly rejected Sheehan's contention that it could assert specific personal jurisdiction based on the fact that Appellees' actions in Ireland caused injuries in the United States. Sheehan fails to show that any

Appellee did anything to "purposefully reach out beyond" Ireland and affirmatively affiliate themselves with the United States in their dealings with the Blackrock Shares and the Ballyheigue Property. *Walden*, 571 U.S. at 285 (internal quotation marks and alteration omitted). Rather, all Appellees are Irish residents whose actions occurred entirely in Ireland and were directed toward property located in Ireland. The only connection between Appellees' suit-related conduct and the United States is Sheehan's residence in Illinois and his unilateral act of filing for Chapter 11 bankruptcy, thereby giving rise to the automatic stay that Appellees allegedly violated. But specific personal jurisdiction cannot be based "on the 'unilateral activity' of a plaintiff." *Id.* at 286 (quoting *Burger King*, 471 U.S. at 475). Therefore, the Court finds that Appellees lacked sufficient minimum contacts with the United States for the Bankruptcy Court to assert personal jurisdiction over them in this case. Accordingly, the Bankruptcy Court's conclusion that it lacked personal jurisdiction over Appellees is affirmed. And because the Bankruptcy Court correctly found that it lacked personal jurisdiction, this Court does not need to address whether insufficient service of process and *forum non conveniens* were also proper bases for dismissal.

Next, the Court addresses Sheehan's assertion that the Bankruptcy Court should have allowed him to engage in discovery regarding Appellees' minimum contacts as an alternative to dismissal. It was within the Bankruptcy Court's discretion to permit jurisdictional discovery and its denial of Sheehan's request for such discovery is reviewed for an abuse of discretion. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express Enters. Ltd.*, 230 F.3d 934, 946 (7th Cir. 2000) (reviewing the district court's denial of jurisdictional discovery for abuse of discretion). "At minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Id.*

For the reasons discussed above, Sheehan falls far short of making a colorable showing of personal jurisdiction. Further, all of the facts that he wishes to investigate through jurisdictional discovery either do not involve Appellees' suit-related conduct or concern their contacts with Sheehan regarding the Blackrock Shares or the Ballyheigue Property. *See Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); *id.* at 286 ("[A] defendant's relationship with a plaintiff . . ., standing alone, is an insufficient basis for jurisdiction."). The Bankruptcy Court's decision is reinforced by the fact that "[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Cent. States, Se. & Sw. Areas Pension Fund*, 230 F.3d at 946. Thus, this Court finds that the Bankruptcy Court did not abuse its discretion in denying Sheehan's request for jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's orders granting Appellees' motions to dismiss the adversary complaints for lack of personal jurisdiction are affirmed.

ENTERED:

Dated:  September 24, 2021

_____
Andrea R. Wood
United States District Judge